[Cite as *In re Adoption of M.C.*, 2011-Ohio-6527.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | Case Nos. 11CA5 |
| | : | 11CA6 |
| THE ADOPTION OF M.C. | : | |
| | : | <u>DECISION AND</u> |
| and | : | <u>JUDGMENT ENTRY</u>[1] |
| | : | |
| IN THE MATTER OF: | : | |
| | : | **RELEASED 12/15/11** |
| THE ADOPTION OF C.C. | : | |

_____

APPEARANCES:

D.P., Chillicothe, Ohio, pro se Appellant.

B.C. and T.C., Jackson, Ohio, pro se Appellees.
_____

Harsha, P.J.

{¶1}   D.P., the biological father of M.C. and C.C., appeals the trial court's

decision to grant the petitions for adoption filed by the children's stepfather, thereby

terminating D.P.'s parental rights.  Father contends that the trial court violated his

procedural due process rights when it denied his request for appointed counsel.

However, Father failed to support his argument with any relevant authority to establish a

right to counsel exists for indigent parents in adoption proceedings initiated by a private

party.  If an argument exists to support Father's assigned error, it is not this Court's duty

to root it out.  Therefore, we reject Father's contention.

{¶2}   In addition, Father, who has been incarcerated throughout these

proceedings, claims he had a folder containing notes and evidence in his prison cell and

---

[1] We recognize that under App.R. 11.2 this appeal receives priority status, and there has been a significant delay in the release of this decision.  However, this delay was necessitated in part by a remand to the trial court to supplement the record.

the court denied him access to the folder during a hearing on the petition. Father argues that the court violated his "Sixth Amendment" right to "conduct his own defense." However, the Sixth Amendment applies to criminal prosecutions, not adoption proceedings. Moreover, there is no evidence the court denied Father access to the folder as opposed to Father simply forgetting to bring it to the hearing. In fact, the court allowed Father to submit the folder after the hearing concluded. Therefore, we reject this argument.

{¶3}    Father also contends that the trial court erred when it found his consent to the adoptions was not required because there was no justifiable cause for his failure to contact the children in the year immediately preceding the filing of the petitions. Father claims he tried to send the children letters and cards but the Gallia County Prosecutor's Office seized these items under a "no contact" order stemming from his criminal case involving the children's mother and maternal grandfather. In other words, Father argues his failure to communicate with the children is justified. However, the only evidence that supports Father's contentions is his own self-serving testimony, which the trial court was free to disbelieve. Thus, we cannot say that the court's finding was against the manifest weight of the evidence. This decision renders moot Father's additional contention that the court erred when it found his consent was also not required because there was no justifiable cause for his failure to provide maintenance and support for the children in the requisite one-year period.

{¶4}    Finally, Father complains that the trial court failed to conduct a best interest hearing or make a best interest finding before it granted the adoption petitions. However, it is apparent from the record that the trial court conducted the best interest

hearing at the same time it conducted the hearing on the consent issue and that the trial court in fact made a best interest finding. Accordingly, we affirm the trial court's judgment.

## I. Facts

{¶5}    M.C. and C.C. are the biological children of D.P. and T.C. In 2010 T.C.'s husband, B.C., filed petitions to adopt his stepchildren and thus terminate D.P.'s parental rights. D.P., who opposed the petitions, filed a motion for appointed counsel, which the trial court denied. After a hearing on the petitions, the trial court found that D.P. had not had contact with or paid any support for the children for at least one year immediately preceding the filing of the petitions. The court did not find any justifiable cause for this lack of communication or support and concluded that D.P.'s consent to the adoption was not necessary. Then, the court issued final decrees of adoption, and this consolidated appeal followed.

## II. Assignments of Error

{¶6}    D.P. assigns four errors for our review:

THE PROBATE COURT COMMITTED SUBSTANTIAL REVERSBLE [sic] ERROR IN ITS RULING THAT BIOLOGICAL FATHER, APPELLANT * * *, FAILED TO SHOW JUSTIFIABLE CAUSES FOR NOT COMMUNICATE [sic] AND SUPPORTING HIS MINOR CHILDREN AND THAT HIS CONSENT TO ADOPTION OF C.C. AND M.C. WAS NOT NECESSARY.

THE PROBATE COURT DEPRIVED APPELLANT * * * OF HIS PROCEDURAL DUE PROCESS RIGHTS BY NOT APPOINTING HIM ASSISTANCE OF COUNSEL PRIOR TO CURTAILING HIS CONSTITUTIONAL CUSTODIAL RIGHTS.

THE PROBATE COURT ERRED IN FAILING TO MAKE A SPECIFIC FINDING THAT THE ADOPTION WAS IN THE BEST INTEREST OF THE MINOR CHILDREN AND FURTHER IN FAILING TO SCHEDULE A HEARING TO DETERMINE THE BEST INTEREST OF THE MINOR CHILDREN.

THE JACKSON COUNTY PROBATE-JUVENILE JUDGE, STEPHEN D. MICHAEL, ERRED WHEN DID [sic] NOT ALLOW APPELLANT * * * ACCESS TO HIS NOTES AND EVIDENCE (LEGAL FOLDER) AND BY DOING SO APPELLANT WAS UNPREPARED TO PRESENT HIMSELF AND/OR UNABLE TO PRESENT ANY EVIDENCE ON HIS OWN BEHALF.

For ease of analysis, we will address the assignments of error out of order.

### III. Right to Counsel

{¶7}    In his second assignment of error, Father contends that he is indigent[2] and the trial court violated his procedural due process rights when it refused to appoint him counsel. At the trial level, Father argued that he had a right to appointed counsel under the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution,[3] not the Due Process Clause. "It is well-settled that failing to object at the trial court level to a complained of error results in a waiver of that error on appeal. Thus, an appellate court may recognize an error that an appellant waived only if it constitutes plain error." *In re E.W.*, Washington App. Nos. 10CA18-10CA20, 2011-Ohio-2123, at ¶11 (internal citations omitted). However, as we explain below, Father failed to support his argument with any relevant authority to establish that the trial court committed plain error when it denied his request.

---

[2] Father claims he filed an "Affidavit of Indigent [sic]" to support his motion. (Appellant's Br. 5). Father actually filed an "Affidavit of Poverty." Although the affidavit does not specifically refer to Father's inability to pay for an attorney, Father averred that he had income of $12.00 per month from prison labor and could not "pay the cost of this case or give security for it[.]" (Aff. of Poverty ¶¶3-4.).

[3] At the hearing on the adoption petition, the following exchange occurred:

JUDGE MICHAEL:     * * * Now you're probably going to ask me about a lawyer.
[FATHER]:               Yes, sir.
JUDGE MICHAEL:     And I don't have to, and I won't appoint you a lawyer.
[FATHER]:               Ok, that's fine.

We do not interpret Father's response as a waiver of his right to counsel. Rather, he appears to simply acknowledge the court has made a final decision on his request for counsel.

{¶8}    Neither the Supreme Court of Ohio nor this Court has addressed the issue

of whether an indigent parent contesting an adoption petition filed by a private party has

a procedural due process based right to appointed counsel.  Father claims R.C.

2151.352 confers such a right.  He also cites *State ex rel. Asberry v. Payne*, 82 Ohio

St.3d 44, 1998-Ohio-596, 693 N.E.2d 794, which involved a right to counsel claim

based on this statute.  However, R.C. 2151.352 confers a statutory right to counsel, not

a constitutional right, and only applies in proceedings under Chapters 2151 and 2152 of

the Revised Code.  Adoption proceedings fall under Chapter 3107.  Therefore, these

arguments are meritless.

{¶9}    Father also cites Juv.R. 4(A), which states:  "Every party shall have the

right to be represented by counsel and every child, parent, custodian, or other person in

loco parentis the right to appointed counsel if indigent.  These rights shall arise when a

person becomes a party to a juvenile court proceeding."  However, the Ohio Rules of

Juvenile Procedure "prescribe the procedure to be followed in *all juvenile courts of this*

*state* in all proceedings coming within the jurisdiction of such courts * * *."  Juv.R. 1(A)

(Emphasis added).  The adoption proceedings occurred in probate court, not juvenile

court.  Moreover, even if the Juvenile Rules applied, Juv.R. 4(A) also provides:  "This

rule shall not be construed to provide for a right to appointed counsel in cases in which

that right is not otherwise provided for by constitution or statute."  In other words, the

rule does not create a right to appointed counsel, let alone a procedural due process

based right to counsel.  We also reject this argument.

{¶10}  Finally, Father cites *Lassiter v. Department of Social Services* (1981), 452

U.S. 18, 101 S. Ct. 2153, 68 L.E.2d 640 for the following proposition:  "The right to

cuounsel [sic] in proceedings to terminate parental right's [sic] is a due-process right."

In *Lassiter*, a county social services department, i.e. the state, filed a petition to

terminate a mother's parental rights. *Lassiter* at 20-21. The mother claimed she was

indigent and entitled to appointed counsel under the Fourteenth Amendment Due

Process Clause. Id. at 24. Contrary to what Father's description of *Lassiter* implies, the

Court declined to adopt a categorical rule that the "Constitution requires the

appointment of counsel in every parental termination proceeding." Id. at 31. Instead,

the court adopted a case-by-case approach to the issue. Id. at 32.

**{¶11}** However, a private party (the children's stepfather) filed the adoption

petitions in this case. The Fourteenth Amendment provides protection against

"governmental—not private—action." *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d

560, 2010-Ohio-4601, 939 N.E.2d 891, at ¶41, citing *Blum v. Yaretsky* (1982), 457 U.S.

991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534. Father advances no argument as to how

state action exists in this case. Moreover, Father makes no effort to explain how

*Lassiter*, which adopted a case-by-case approach to the right to counsel issue for

parental termination proceedings initiated by the state, creates a categorical rule that

procedural due process requires appointment of counsel in adoptions initiated by private

parties.

**{¶12}** We recognize this Court has "long had a policy of affording 'considerable

leniency' to pro se litigants." *State v. Ritchie*, Pickaway App. No. 10CA20, 2011-Ohio-

164, at ¶5, quoting *Robb v. Smallwood*, 165 Ohio App.3d 385, 2005-Ohio-5863, 846

N.E.2d 878, at ¶5. "We have not held pro se litigants to the same standard as

attorneys." Id., quoting *Robb* at ¶5. However, Father has failed to advance any

relevant authority for his claim that a categorical, procedural due process based right to appointed counsel exists for indigent parents in adoption proceedings initiated by a private party. If an argument exists to support Father's assigned error, it is not this Court's duty to root it out, particularly when the alleged error involves a constitutional issue of first impression in this Court. See *State v. Lynch*, Cuyahoga App. No. 95770, 2011-Ohio-3062, at ¶18; See, also, *Brown v. August*, Wayne App. No. 01CA0024, 2002-Ohio-80, 2002 WL 22877, at *4 ("It is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error."). Accordingly, we overrule the second assignment of error.

IV.  Sixth Amendment

**{¶13}** In his fourth assignment of error, Father contends that the trial court violated his right under the Sixth Amendment to the United States Constitution to "conduct his own defense" because during the hearing on the petition, the court denied him access to a folder in his prison cell containing notes and evidence  The Sixth Amendment provides:

> *In all criminal prosecutions*, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

(Emphasis added).  Thus by its plain language, this Amendment applies to "criminal prosecutions," not adoption proceedings.

**{¶14}** Moreover, there is no evidence that the trial court denied Father access to the folder as opposed to Father simply forgetting to bring it with him.  Though the court

had no obligation to do so, after the hearing the court allowed Father to submit his file for the court's review.  Father merely speculates that had he been able to present his folder in open court, the outcome of the proceedings would have been different.  In his argument for this assignment of error, Father also complains that when he did submit the folder, the trial court ignored certain evidence in it.  We address these issues in our discussion of the first assignment of error.  We overrule Father's fourth assignment of error.

## V.  Consent

{¶15}  "It is undisputed that parents have a fundamental liberty interest in the care, custody and management of their children."  *In re Adoption of S.L.N.*, Scioto App. No. 07CA3189, 2008-Ohio-2996, at ¶19, citing *Troxel v. Granville* (2000), 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49.  The right to raise one's child is an "essential and basic civil right [.]"  Id., citing *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680.  An adoption terminates that right.  *In re Adoption of Greer*, 70 Ohio St.3d 293, 298, 1994-Ohio-69, 638 N.E.2d 999.  See R.C. 3107.15(A)(1).

{¶16}  "Generally, children cannot be adopted without the consent of their natural parents because consent is a jurisdictional prerequisite to adoption."  *S.L.N.* at ¶19, citing *McGinty v. Jewish Children's Bureau* (1989), 46 Ohio St.3d 159, 161, 545 N.E.2d 1272 (per curiam).  However, R.C. 3107.07(A) offers an exception to this general rule.  Consent to adoption is not required of "[a] parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and

support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." R.C. 3107.07(A).

{¶17} Thus "[t]he party that seeks to adopt a child without parental consent must prove, by clear and convincing evidence, both (1) that the natural parent failed to support or to communicate with the child for the requisite one-year time period, and (2) that the failure was without justifiable cause." *S.L.N.* at ¶21, citing *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919, at paragraph one of the syllabus. "Once the petitioner has established, by clear and convincing evidence, that the biological parent has failed to communicate with or to support the child for the one-year period, the burden of going forward with evidence shifts to the biological parent to show some facially justifiable cause for the failure." *In re Adoption of R.M.Z.*, Montgomery App. No. 23511, 2009-Ohio-5627, at ¶11, citing *Bovett* at paragraph two of the syllabus. "The burden of proof, however, remains at all times with the petitioner, who must establish the lack of justifiable cause by clear and convincing evidence." Id., citing *Bovett* at paragraph two of the syllabus.

{¶18} "Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 104, 495 N.E.2d 23. However, even under the clear and convincing standard, our review is deferential. "We will not disturb a finding that

parental consent is unnecessary for an adoption unless it is against the manifest weight of the evidence." *S.L.N.* at ¶22, citing *Bovett* at paragraph four of the syllabus. "In other words, if the trial court's finding is supported by some competent credible evidence, that decision will survive appellate review." Id., citing *Shemo v. Mayfield Hts.*, 88 Ohio St.3d 7, 10, 2000-Ohio-258, 722 N.E.2d 1018.

{¶19} We recognize that the trial court, as trier of fact, "is obviously in a better position than the appellate court to view the witnesses and to observe their demeanor, gestures and voice inflections, and to use those observations in weighing the credibility of the proffered testimony." Id. at ¶23, citing *Myers v. Garson*, 66 Ohio St.3d 610, 615, 1993-Ohio-9, 614 N.E.2d 742. "Accordingly, we defer to the trial court on issues of weight and credibility." Id. A trial court is "free to believe all, part, or none of the testimony of any witness who appears before it." Id., citing *Rogers v. Hill* (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438.

{¶20} Although Father contends that he sent the children letters and cards during the year preceding the filing of the adoption petition, he appears to concede that the children never received these communications. Therefore, he does not contend that the petitioner failed to establish by clear and convincing evidence that he failed to contact his children during the year preceding the filing of the petition. However, Father claims the Gallia County Prosecutor's Office intercepted the letters and cards based on a "no contact" order stemming from his criminal case involving T.C. and the children's maternal grandfather. Thus, Father contends that he had a justifiable cause for not communicating with the children.

{¶21} Father claims a "no contact" order prohibits contact with T.C.'s "immediate

family," which includes the children.[4]  Some courts have held that a "no contact" court order is justifiable cause for a parent's failure to communicate with his children.  *In re K.K.*, Lorain App. Nos. 05CA008849 & 05CA008850, 2006-Ohio-1488, at ¶9.  However, the only evidence that supports Father's claim that this order existed or that the Gallia County Prosecutor's Office in fact seized letters and cards is Father's testimony.

{¶22}  After the hearing on the petition, Father submitted a folder containing other "evidence" to the trial court.  This folder included a letter purportedly sent by an Assistant State Public Defender stating that Father was "ordered to have no contact with [his] daughters" and that the Gallia County Prosecutor's Office had a file that "included cards that [Father] sent to [his] daughters."  The trial court found that none of the documents Father submitted were "relevant" and "did not consider them in making its findings."  We disagree with the court's relevancy finding concerning the letter because it tends to make the existence of the no contact order and confiscated communications more probable.  See Evid.R. 401.  However, the letter clearly constitutes inadmissible hearsay.  See Evid.R. 801(C).  Moreover, it does not appear that the petitioner ever received a copy of the documents Father submitted or had an opportunity to object to them.

{¶23}  Father attached what appears to be a copy of the alleged "no contact" order to his appellate brief.  However, he did not offer the order as evidence at the trial level.  Therefore, it is not part of the trial record, and we cannot consider it.  See App.R. 9.[5]

---

[4] At the hearing on the petition, Father indicated he believed the order did not include his children and the prosecutor's office improperly seized the letters and cards.
[5] The parties included many other documents in their briefs that we cannot consider because they are not part of the record.  Father, T.C., and B.C. submitted affidavits.  Father also submitted a copy of a docket

**{¶24}** Thus the only evidence of the "no contact" order and confiscated cards and letters was Father's own self-serving testimony, which the trial court was free to disbelieve. See *S.L.N.*, supra, at ¶23. Therefore, the trial court's finding that Father's consent to the adoption was unnecessary because he failed, without justifiable cause, to communicate with his children for the requisite time period was not against the manifest weight of the evidence. We overrule Father's first assignment of error to the extent it challenges this finding. This decision renders moot Father's additional contention that the court erred when it found that his consent was not required because he failed, without justifiable cause, to provide for the maintenance and support of the children for the requisite time period.

## VI. Best Interest

**{¶25}** In his third assignment of error, Father contends that the trial court never held a best interest hearing and never made a best interest finding before it granted the adoption petitions. R.C. 3107.11(A) provides:

> After the filing of a petition to adopt an adult or a minor, the court shall fix a time and place for hearing the petition. * * * At least twenty days before the date of hearing, notice of the filing of the petition and of the time and place of hearing shall be given by the court to all of the following:
>
> (1) Any * * * person whose consent to the adoption is required by this chapter but who has not consented;
>
> (2) A person whose consent is not required as provided by division (A), (G), (H), or (I) of section 3107.07 of the Revised Code and has not consented;
>
> * * *

**{¶26}** R.C. 3107.14(C) provides:

> If, at the conclusion of the hearing, the court finds that the required

---

in a case involving a paternity complaint for support and a note purportedly from the trial judge in this matter.

consents have been obtained or excused and that the adoption is in the best interest of the person sought to be adopted as supported by the evidence, it may issue, subject to division (C)(1)(a) of section 2151.86, section 3107.064, and division (E) of section 3107.09 of the Revised Code, and any other limitations specified in this chapter, a final decree of adoption * * *.

**{¶27}** "Thus, an adoption proceeding is a two-step process involving a 'consent' phase and a 'best-interest' phase. Even if a court determines that a parent's consent is not required, it must still make a separate determination that the adoption is in the child's best interest." *In re Adoption of Jordan* (1991), 72 Ohio App.3d 638, 645, 595 N.E.2d 963. See *In re Adoption of Walters*, 112 Ohio St.3d 315, 2007-Ohio-7, 859 N.E.2d 545, at ¶5, citing R.C. 3107.14(C). But contrary to Father's contention, nothing "either requires or prevents a separate hearing for the consent and best-interests portions of an adoption proceeding." Id. at ¶21. "[A]lthough a court may choose to hold separate hearings on consent and the best interests of the child, there is no requirement to do so. One hearing to address both requirements is sufficient, provided notice of the adoption hearing pursuant to R.C. 3107.11(A) is afforded the biological parent." Id.

**{¶28}** Here, the record indicates that the trial court held the best interest hearing at the same time it held the consent hearing. At the hearing, the trial court specifically told the petitioner's attorney: "Basically this is your motion for the Court, so it's your job to prove to me that this is lawful and in the *child's best interest * * *.*" (Emphasis added). In addition, in discussing Father's convictions for assault and abduction, the trial judge noted that the judgment entry related to these convictions "is going to tell me something about how long you're going to be and what affect that has on… it certainly goes to best interests * * *." Therefore, we reject Father's contention that the court failed to conduct a best interest hearing.

{¶29} Moreover, the trial court did make a "best interest" finding. Admittedly, in the January 18, 2011 judgment entries where the trial court finds that Father's consent to the adoptions is unnecessary, the court purported to grant the adoption petitions and made no best interest findings. But in the final decrees of adoption, the trial court specifically found that granting the petitions was "in the best interest" of the children. Therefore, we reject Father's argument that the court failed to make the requisite best interests finding. And since Father does not contend that the trial court erroneously found that adoption was in the best interest of the children, we do not address that issue. Accordingly, we overrule Father's third assignment of error.

VII.  Summary

{¶30} We overrule Father's second, third, and fourth assignments of error. We overrule Father's first assignment of error to the extent he challenges the court's finding that he lacked justifiable cause for not communicating with the children for the requisite time period. His first assignment of error is moot to the extent he challenges the court's finding that he lacked justifiable cause for not supporting the children for the requisite time period. Accordingly, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court, Probate Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J.: Concurs in Judgment and Opinion.
Kline, J.:  Concurs in Judgment and Opinion as to Assignment of Error III;
           Concurs in Judgment Only as to Assignments of Error I, II, & IV.

For the Court

BY: _____
     William H. Harsha, Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**